**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISON AT DAYTON**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **Criminal No. 3:25-cr-3** |
| **Plaintiff,** | : | **JUDGE THOMAS M. ROSE** |
| **v.** | : | **UNITED STATES' SENTENCING MEMORANDUM** |
| | : | |
| **TIMOTHY FARR,** | : | |
| **Defendant.** | | |

---

## INTRODUCTION

Defendant Timothy Farr robbed twelve separate convenience stores at gun point. In each convenience store there was a separate clerk who was traumatized by Defendant's crimes. Defendant is facing a range of 15 to 25 years in federal prison. Defendant requests a sentence of 15 years. However, based upon the separate crimes of conviction and relevant conduct of this Defendant, a term of 20 years in prison is sufficient but not greater than necessary to meet the goals of federal sentencing.

The United States concurs with the Offense Level Computation as calculated in the Final Pre-Sentence Investigation Report ("PSR"). Based upon a total offense level of 27 and a Criminal History Category of II, the guideline imprisonment range for the Hobbs Act Robbery, 18 U.S.C. § 1951, is 78 months to 97 months (6 years, 6 months to 8 years, 1 month). Because Defendant pleaded guilty to two counts of Using and Carrying a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii), these two offenses must be served consecutive to each other and any other offense of conviction.

As such, the advisory guideline sentence in aggregate is 20 years, 6 months to 22 years, 1 month. For reasons detailed below, the Court should impose a total sentence of 20 years in prison—7 years on each Using and Carrying a Firearm During and in Relation to a Crime of Violence, and 6 years for the underlying robberies.

## FACTUAL BACKGROUND

Starting on December 3, 2024, through December 15, 2024, the Defendant committed twelve armed robberies of businesses in the Southern District of Ohio. Over the course of thirteen nights, Defendant robbed twelve separate gas stations, each time armed with a firearm, and with his face hidden behind a mask and hat. Defendant would follow the same pattern and wear the same/largely similar clothing and accessories to each robbery. At each robbery, Defendant brandished his firearm at the terrified store employee, and demand cash and other items. In total, Defendant stole $8,102.

These robberies spanned the geographic bounds of the district, from Springfield, to Dayton, to Cincinnati. Each robbery resulted in trauma to the store clerks. As the crime spree progressed, Defendant became more aggressive with his verbal commands to the clerks and his use of the firearm. Defendant was apprehended by law enforcement on December 16, 2024, in the evening. He was found in the suspect vehicle with a firearm, grocery sacks, the N95 mask, and gray pattern gloves. As such, it is reasonable to conclude that he was on his way to conduct another robbery.

A detailed recitation of each robbery will follow to provide the Court with the gravity of each robbery, the violent nature of each robbery, and the Defendant's lack of respect for the law.

**Counts One and Two:**

On December 3, 2024, at approximately 10:17pm, a masked individual, later identified as Defendant, entered the Sunoco gas station located at 1502 Wayne Avenue, Dayton, Ohio. The

surveillance video shows Defendant wearing a dark colored jacket, dark colored pants, gray two-tone style gloves, dark colored shoes and a black balaclava mask covering a portion of his face.

Defendant walks through the store, attempting to appear like a normal customer. He then goes behind the counter, brandishes a black handgun, points it at the Sunoco employee and demands the cash from both registers. Defendant also demands several packs of cigarettes and a box of Black and Mild Filter Tips. Defendant opens a green plastic bag he appeared to have brought with him and orders the store employee to place the cash and cigarettes into the plastic bag. After receiving approximately $785.00, several packs of Newport cigarettes, and a box of Black and Mild Filter Tips, he flees the store. A screen shot of surveillance footage is below:



**Counts Three and Four:**

On December 4, 2024, at approximately 11:36pm, a masked individual, later identified as Defendant, entered the Marathon gas station located at 4412 Linden Avenue, Riverside, Ohio. The surveillance video shows Defendant wearing a dark colored jacket, dark colored pants, gray two-tone style gloves, dark colored crocs-style shoes, a black balaclava covering his head, and a white N-95 style mask with yellow straps covering a portion of his face.

Defendant walks through the store, attempting to appear like a normal customer. He then goes behind the counter, brandishes a black handgun, points it at the Marathon employee and demands the cash from both registers. Defendants opens a black plastic bag he appeared to have brought with him and orders the store employee to place the cash from the first register into the bag. Defendant then orders the employee to open the second register which was empty. After receiving approximately $1000.00, he orders the employee to the ground and flees the store.

**Counts Five and Six:**

On December 6, 2024, at approximately 6:45pm, a masked individual, later identified as Defendant, entered Ray's Xenia Avenue Market located at 720 Xenia Avenue, Dayton, Ohio. The surveillance video shows Defendant wearing a dark colored jacket, dark colored pants, gray two-tone style gloves, dark colored crocs-style, a black beanie covering his head, and a white N-95 style mask with yellow straps covering a portion of his face.

Defendant walks through the store, attempting to appear like a normal customer. He then goes behind the counter, brandishes a black handgun, points it at the Ray's clerk and demands the cash from the register. Defendant opens a white plastic bag he appeared to have brought with him and orders the store clerk to place the cash from the register into the bag. After receiving approximately $774.00 he flees the store.

**Counts Seven and Eight:**

On December 7, 2024, at approximately 11:31pm, a masked individual, later identified as Defendant, entered the Free Pike Drive-Thru located at 4053 Free Pike, Dayton, Ohio. The surveillance video shows Defendant wearing a dark colored jacket, dark colored pants, gray two-tone style gloves, dark colored crocs-style shoes, a black beanie style hat, and a white N-95 style mask with yellow straps covering a portion of his face.

Defendant had walked into the North side of the drive through area of the business and asked the employee if they would serve people who walked through the business. After being told no, Defendant walked further into the drive-thru area of the business, brandished a handgun, and pushed the employee to the back of the store where the cash registers were. Defendant then ordered the store employee to remove the money from the register and place it into the white plastic bag. After receiving approximately $800.00, he flees the store. A screen shot of surveillance footage is below:




**Counts Nine and Ten:**

On December 8, 2024, at approximately 6:40pm, a masked individual, later identified as Defendant, entered the Sunoco Gas Station located at 1053 Selma Road, Springfield, Ohio. The surveillance video shows Defendant wearing a dark colored jacket, dark colored pants, gray two-tone style gloves, dark colored crocs-style shoes, a black beanie covering his head, and a white N-95 style mask with yellow straps covering a portion of his face.

Defendant walks through the store, attempting to appear like a normal customer. He then goes behind the counter, brandishes a black handgun, points it at the store employee and demands the cash from the register. Defendant then retrieves the money from the register and places it into the white plastic bag. Defendant then orders the employee to grab several packs of Newport

cigarettes and place then into the white bag. After receiving approximately $500.00 to $800.00 and several packs of Newport Cigarettes, he flees the store.

**Counts Eleven and Twelve:**

On December 8, 2024, at approximately 9:25pm, a masked individual, later identified as Defendant, entered the Family Dollar located at 5335 Salem Avenue, Trotwood, Ohio. The surveillance video shows Defendant wearing a dark colored jacket, dark colored pants, gray two-tone style gloves, dark colored crocs-style shoes, a black beanie covering his head, and a white N-95 style mask with yellow straps covering a portion of his face.

Defendant walks through the store, attempting to appear like a normal customer. He walked down the center aisle and picked up a gas can and walked to the counter. He then brandishes a black handgun, points it at the store employees, and goes behind the counter. He demands the cash from the register, telling them to "hurry up". This statement, "hurry up", is a demand that was used throughout multiple robberies. Defendant then retrieves the money from the register and places it into the black plastic bag. After receiving approximately $947.00, he flees the store.

**Counts Thirteen and Fourteen:**

On December 10, 2024, at approximately 10:25pm, a masked individual, later identified as Defendant, entered the Mini Mart store located at 1117 N. Main Street, Dayton, Ohio. The surveillance video shows Defendant wearing a dark colored jacket, dark colored pants, gray two-tone style gloves, dark colored crocs-style shoes, a black beanie covering his head, and a white N-95 style mask with yellow straps covering a portion of his face.

Defendant walks through the store, attempting to appear like a normal customer. He then goes behind the counter, brandishes a black handgun, points it at the employees and demands the cash from the registers. FARR opens a black plastic bag he appeared to have brought with him

orders the store clerks to place the cash from the registers into the bag. After receiving approximately $1000.00, he flees the store. A screen shot of surveillance footage is below:



**Counts Fifteen and Sixteen:**

On December 11, 2024, at approximately 9:08pm, a masked individual, later identified as Defendant, entered the Marathon gas station located at 1737 E. Fifth Street, Dayton, Ohio. The surveillance video shows Defendant wearing a dark colored jacket, dark colored pants, gray two-tone style gloves, dark colored crocs-style shoes, a black beanie covering his head, and a white N-95 style mask with yellow straps covering a portion of his face.

Defendant walks through the store, attempting to appear like a normal customer. He then goes up to the counter, brandishes a black handgun, points it at the employee and demands the cash from the register. Defendant opens a white plastic bag he appeared to have brought with him and orders the store clerks to place the cash from the register into the bag. After receiving approximately $488.00, he flees the store.

**Counts Seventeen and Eighteen:**

On December 12, 2024, at approximately 9:09pm, a masked individual, later identified as Defendant, entered the White Oak Deli in Green Township, operating at 6035 Cheviot Road, Cincinnati, Ohio. The surveillance video shows Defendant wearing a dark colored jacket, dark

colored pants, gray two-tone style gloves, dark colored crocs-style shoes, a black beanie covering his head, and a white N-95 style mask with yellow straps covering a portion of his face.

Defendant walks through the store, attempting to appear like a normal customer. He then goes up to the counter, grabs two liquor items, and brandishes a black handgun, points it at the employee and demands the cash from the register. The employee told Defendant they didn't have any cash and Defendant fled the store with the liquor.

**Counts Nineteen and Twenty:**

On December 14, 2024, at approximately 9:15pm, a masked individual, later identified as Defendant, entered Family Dollar operating at 1014 West Main Street, Springfield, Ohio. The surveillance video shows Defendant wearing a dark colored jacket, dark colored pants, gray two-tone style gloves, dark colored crocs-style shoes, a black beanie covering his head, and a white N-95 style mask with yellow straps covering a portion of his face.

Defendant walks through the store, attempting to appear like a normal customer. He then goes up to the counter, brandishes a black handgun, points it at the employees and demands the cash from the register. Defendant then goes behind the counter and opens a white plastic bag he appeared to have brought with him and orders the store clerks to place the cash from the registers into the bag. After receiving approximately $600.00, he flees the store.

**Counts Twenty-One and Twenty-Two:**

On December 15, 2024, at approximately 9:08pm, a masked individual, later identified as Defendant, entered the Sammy's Drive-thru store located at 1290 Woodman Drive, Dayton, Ohio. The surveillance video shows Defendant wearing a dark colored jacket, dark colored pants, gray two-tone style gloves, dark colored shoes, a black balaclava covering his head, and a white N-95 style mask with yellow straps covering a portion of his face.

Defendant walks through the store, attempting to appear like a normal customer. He then goes behind the counter, brandishes a black handgun, points it at the employee and demands the cash from the register. Defendant opens a white plastic bag he appeared to have brought with him and orders the store clerk to place the cash from the register and several packs of Newport cigarettes into the plastic bag. Defendant and the employee then move to the second register. The employee places the cash from the second register along with two pairs of wireless earphones from the store shelf into the plastic bag. After receiving approximately $400.00 and the other items, he flees the store.

**Counts Twenty-Three and Twenty-Four:**

On December 15, 2024, at approximately 11:18pm, a masked individual, later identified as Defendant, entered United Dairy Farmers located at 7111 Vine Street, Cincinnati, Ohio. The surveillance video shows Defendant wearing a dark colored jacket, dark colored pants, gray two-tone style gloves, dark colored shoes, a black balaclava covering his head, and a white N-95 style mask with yellow straps covering a portion of his face.

Defendant enters United Dairy Farmers and immediately goes behind the counter, brandishes a black handgun, points it at the employees, and demands the cash from the register. Defendant opens a plastic bag he appeared to have brought with him and orders the store clerks to place the cash from the registers into the plastic bag. Defendant then flees the store.

**Investigative Steps to Arrest Defendant using Flock Safety Camera System:**

During the investigation, state and federal law enforcement were able to identify a vehicle of interest utilizing the Flock Safety Camera System. The vehicle, identified as a 2011 red Ford Taurus bearing license plate number KJD7246, was captured by Flock cameras as being in the area around the time of several robberies. KJD7246 was checked though another accessible camera system that placed the vehicle near 719 Kammer Avenue Dayton, Ohio on or about November 24,

2024. Indeed, Defendant was captured on surveillance video (using the same vehicle he was apprehended in in this case) committing shoplifting at a Wal-Mart on November 26, 2024.

On December 16, 2024, Defendant was apprehended in the suspect vehicle, with all the same outfit items, i.e., gloves, shoes, N95 mask, balaclava, plastic bags, and a firearm. DPD likely apprehended Defendant as he was on his way to conduct another armed robbery. ATF obtained a search warrant for historical tower data of Defendant's phone and Defendant's phone was at various robbery locations at the time of the robberies.

## ARGUMENT

Following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the sentencing guidelines are "effectively advisory." *Id.* at 245. Nonetheless, the advisory nature of the sentencing guidelines does not mean that they are irrelevant to the imposition of a sentence. As the Sixth Circuit has consistently held, district courts must consider the advisory guidelines range in imposing a sentence. *E.g.*, *United States v. Recla*, 560 F.3d 539, 548 (6th Cir. 2009) ("A district court must consider the advisory Guidelines range . . . ."); *United States v. Blackie*, 548 F.3d 395, 400 (6th Cir. 2008) ("The district court must also acknowledge 'the defendant's applicable Guideline range.'"). Indeed, the Guidelines "seek to embody the Section 3553(a) considerations, both in principle and in practice." *Rita v. United States*, 551 U.S. 338, 350 (2007). Thus, a sentencing court "must consult [the] Guidelines and take them into account when sentencing" to "provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities." *Booker*, 543 U.S. at 264 (internal quotation omitted).

Defendant has a minimal criminal history, but the gravity of the separate offenses weighs in favor of a twenty-year sentence. The government is cognizant of Defendant's homelessness

issues and lack of father figure, as detailed in the presentence investigation report and argued by counsel for Defendant. The government considered these mitigating factors in fashioning the plea agreement, and in requesting a sentence at the low end of the guidelines[1]. However, Defendant's background does not lessen the harm he caused to innocent victims. Defendant's actions traumatized twelve separate cashiers, whom he robbed at gunpoint. By bringing a firearm to each robbery, Defendant risked the encounter turning deadly. Defendant risked this not once, but twelve separate times, with twelve separate victims. Additionally, Defendant committed the instant offenses while he was under court supervision in Illinois.

Defendant's minimal criminal history and other mitigating factors must be weighed against the severity of his repeated offenses, committed while he was under supervision, and the harm he caused his victims. The government respectfully submits that a 20-year sentence appropriately strikes this balance, and will afford a sentence that is sufficient but not greater to satisfy the principles of sentencing. The government believes, due to his age and minimal criminal record, a 20-year sentence strikes the right balance to afford adequate deterrence, respect for the laws, and just punishment for Defendant.

///

///

///

///

///

---

[1] If Defendant were convicted of all offenses with which he was indicted, he would have faced a mandatory 84 years in prison—effectively a life sentence due to his age.

## CONCLUSION

Based on the foregoing, the government recommends that this Court impose a sentence upon Defendant of twenty years, followed by a three-year term of supervised release subject to the standard conditions. The government also requests the Defendant be ordered to pay $8,102 in restitution to the victims of these multiple violent crimes.

Respectfully submitted,

DOMINICK S. GERACE II
United States Attorney

s/ Ryan A. Saunders

Ryan A. Saunders
Christina E. Mahy
Assistant United States Attorneys
Attorneys for Plaintiff
Walter H. Rice Federal Building and U.S. Courthouse
200 West Second Street, Suite 600
Dayton, Ohio 45402
Office: (937) 225-2910
Fax: (937) 225-2564
E-mail: ryan.saunders2@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to all attorneys of record.

s/ Ryan A. Saunders

Ryan A. Saunders
Assistant United States Attorney